## BUCKNER *v.* STREET.

*(Circuit Court, E. D. Arkansas October Term, 1882.)*

1. EQUITY.—MISTAKE.

The mutual mistake against which equity relieves, relates to something not within the contemplation of the parties in making their contract, and, therefore, not covered nor intended to be covered by it. If there is no misrepresentation or fraudulent concealment of a material fact or a mistake, consisting in an unconsciousness, ignorance, or forgetfulness of a material fact, the contract must stand.

2. SAME—MISREPRESENTATIONS—WHAT SUFFICIENT TO VOID CONTRACT.

A contract may not be set aside on the ground of misrepresentation, unless it be of some material matter constituting some motive to the contract, something in regard to which reliance is placed by one party on the other, and by which he was actually misled, and not merely a matter of opinion open to the inquiry and examination of both parties.

3. SPECIAL WARRANTY DEED.

A deed with a special warranty against all persons claiming by, through, or under the grantor, cannot be extended to a general covenant of warranty against all persons; and the rule is that a party has no remedy on the ground of a mere failure of title, if he has taken no covenants to secure the title, and there is no fraud in the case.

4. SAME—STATUTE OF LIMITATIONS.

In Arkansas the plea of the statute of limitations of five years, to a note given for the purchase money of lands, is not good in bar of a decree *in rem* for a sale of the lands; but it is a bar to the recovery of a personal judgment against the defendant.

In Equity.

The plaintiff filed his bill to foreclose a vendor's lien on certain lands reserved in the deed by which he conveyed the lands to the defendant with covenant of warranty against those only "claiming or to claim the same by, through, or under" the grantor. The defendant filed an answer and cross-bill identical in their statements. The plaintiff has demurred to the cross-bill and excepted to the answer.

The substance of the cross-bill is that the lands in question were owned many years ago by one Faulkner, who executed what is known as a "real estate bank stock mortgage" on them; that Faulkner be-

came otherwise largely indebted to the bank, and finally conveyed the lands and other property to the bank in satisfaction of his indebtedness to it; that Faulkner and his attorney and others understood and believed that this conveyance paid and extinguished the "stock mortgage" as well as his other indebtedness to the bank; that one Sessions afterwards purchased the lands from the bank or its representatives; that Sessions became indebted to the plaintiff and executed to him a mortgage on the lands to secure such indebtedness; that this mortgage was foreclosed, and the lands purchased at the foreclosure sale by the plaintiff, who sold them for their full value to the defendant; that Sessions, at the time he purchased the lands, was advised by his counsel, Mr. Pike, and by Faulkner that the stock mortgage was no longer a lien on the lands; that the plaintiff was also advised to the same effect by his counsel, Mr. Garland; that the defendant was advised to the same effect by Mr. Gallagher, whom he specially retained to examine the title, and by all the other parties named, including the plaintiff; that both plaintiff and defendant honestly believed the mortgage had been paid; that if defendant had not so believed he would not have purchased the lands; that the deed to the defendant was not a general warranty, and contained no covenant against incumbrances, because both parties believed a special warranty sufficient to carry a good title, and that defendant was advised to that effect by his attorney, Mr. Gallagher; that lately a bill has been filed by the state to foreclose this stock mortgage, and that the same is now pending in the chancery court, and if the claim of the state is sustained she will obtain a decree against the lands for a sum largely in excess of their value.

Prayers for injunction and for special and general relief.

*John M. Moore,* for plaintiff.

*Martin & Martin,* for defendant.

CALDWELL, J. It is not alleged that the plaintiff was guilty of any fraud, willful misrepresentation, or concealment, or that the parties made any other or different contract than that disclosed by the face of the deed. Nor is it alleged that the plaintiff had any other or better sources of information than the defendant, either as to the fact or the law relating to the question as to whether the stock mortgage was or not a lien on the lands. It remained on the public records unsatisfied. The defendant knew this. He knew all that could be learned about the facts of the transaction by consulting those cognizant of them, and he knew all about the law applicable to the matter that could be known by consulting learned and able counsel,

upon whose advice he acted in receiving a deed without covenants of warranty.

It is not alleged that the plaintiff expressed any opinion on the question based or claimed to be based on his personal knowledge, or that the expression of his belief founded on information, the sources of which were equally open to defendant, was the inducement to the purchase. He was a citizen of another state; he acquired the lands, not by a purchase from free choice at private sale as an investment, but at judicial sale, when he was compelled to purchase for better for worse to save a debt. He acquired the lands without warranty, and it is clear from the averments in the cross-bill that it was his purpose to convey them as they came to him; to sell whatever he acquired by his purchase at the marshal's sale and no more; and to enter into no covenant that would render him liable beyond that. He seemed to realize the hazard of relying on the uncertain and fading recollections of men to overcome a solemn written record, and he knew that with the lapse of every year this hazard would be increased, and he probably also recognized the fact that the law is not one of the exact sciences, and that the most learned counsel, as well as courts, sometimes err; and, having no personal knowledge on the subject, he prudently declined to covenant against this incumbrance apparent upon the public records, although it was stale with age and was reported to be paid. The defendant, possessed of a more sanguine temperament and less caution, or having more faith in the memories of men and the advice of his counsel, chose to take the risk.

It is not alleged the stock mortgage is a lien upon the land. Indeed, it is in effect said that it is paid, but that, nevertheless, it is possible the state will have a decree, and that in that event the loss should fall on the plaintiff, because it would then be a case of mutual mistake. Mutual mistake about what? Not about the terms of the contract, for that is in writing, and is conceded to express the agreement of the parties. Not about the existence of the stock mortgage, for that was well known to both parties. If the parties were mutually mistaken about anything, it was as to whether or not the state could enforce the stock mortgage. It was precisely because the plaintiff recognized that the information which he, in common with the defendant, possessed on that subject might be erroneous, that he declined to warrant against incumbrances. If it shall turn out that the parties were mutually mistaken on this point, it is a mutual mistake about a matter which in its very nature possessed

elements of uncertainty; and which party should take the risk and bear the loss, in the event of a mutual mistake on the point, was made a matter of convention between the parties, and found expression in the terms of the deed. The mutual mistakes against which equity relieves relate to something not within the contemplation of the parties in making their contract, and therefore not covered, nor intended to be covered, by it.

All the cases cited by the learned counsel for the defendant have been examined. In all of them, where the facts are given, there was the element of misrepresentation or fraudulent concealment of a material fact, or a mistake consisting in an unconsciousness, ignorance, or forgetfulness of a material fact. All of these elements are wanting in this case.

"It is well settled that to set aside a contract on the ground of misrepresentation it must be of something material constituting some motive to the contract, something in regard to which some reliance is placed by one party on the other, and by which he was actually misled; not a matter of opinion merely, equally open to the inquiry and examination of both parties." *Smith* v. *Richards*, 13 Pet. 26; *Hill* v. *Bush*, 19 Ark. 522.

In *Raymond* v. *Raymond*, 10 Cush. 134, the court say the grantee "took a deed with covenants of a very limited character, and having thus taken certain express covenants of his vendor he must be restricted to them, and cannot ingraft upon them the more extended engagement found in a verbal promise made at the time of the execution of the deed. A deed with a special warranty against all persons claiming by, through, or under the grantor cannot thus be extended to a general covenant of warranty against all persons." And the rule is that a party has no remedy on the ground of a mere failure of title, if he has taken no covenants to secure the title, and there is no fraud in the case. *Chesterman* v. *Gardner*, 5 Johns. Ch. 29; *Gouveneur* v. *Elmendorf*, Id. 79.

There is a plea of the statute of limitations to one of the notes given for the purchase money. More than five and less than seven years elapsed between the maturity of the note and the institution of this suit. The plea is not good in bar of a decree *in rem* for a sale of the lands. *Hall* v. *Denkla*, 28 Ark. 507; *Birnie* v. *Main*, 29 Ark. 591. But it is a bar to the recovery of a personal judgment against the defendant.

In the course of the opinion in *Birnie* v. *Main*, *supra*, there is an expression from which it might be inferred that the court held the law on the last point to be otherwise. Such a doctrine is so obviously

unsound and so clearly against all authority that we must suppose that, if the expression referred to is susceptible of such a construction, it is the result of inadvertence or clerical misprision, and does not express the deliberate judgment of the court.

The demurrer to the cross-bill and the exceptions to the answer, except so much thereof as pleads the statute of limitations in bar of a personal judgment on one note, are sustained.